**CONSOLIDATED RAIL
CORPORATION,
Plaintiff,**

v.

**James Roland MADDOX, Individually
and d/b/a J & M Construction and
Demolition, and J & M Construction
and Demolition, an unincorporated
firm, Defendants.**

Civ. A. No. 86–300–JLL.

United States District Court,
D. Delaware.

Aug. 18, 1987.

W. Harding Drane, Jr., of Potter, Anderson & Corroon, Wilmington, Del., and Michael J. Athans, of Lord, Bissell & Brook, Atlanta, Ga., of counsel, for plaintiff.

Alan T. Boyd, of Bayard, Handelman & Murdoch, P.A., Wilmington, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Consolidated Rail Corporation ("Conrail"), a Pennsylvania corporation, filed suit against James Maddox ("Maddox"), a citizen of Delaware, and J & M Construction and Demolition ("J & M Construction"),[1] after Conrail settled a suit brought against it by James F. Tuerk ("Tuerk"), a Conrail employee, who was injured in an area where J & M Construction was removing track and rail pursuant to a contract with Conrail. Although Conrail is the nominal plaintiff, Lloyd's of London ("Lloyd's") is the party pursuing this action, because Lloyd's paid Conrail the amount of its settlement with Tuerk. Additionally, Selected Risks Insurance Company ("Selected Risks") has an interest in this case, because it provided certain insurance coverage to Maddox. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the citizenship of the parties is diverse and the amount in controversy exceeds $10,000.

Conrail's complaint contains three counts. (*See* Docket Item ["D.I."] 1.) The first count alleges Tuerk's injuries were caused by the negligence of J & M Construction. (*Id.* at ¶¶ 12, 13.) The second count alleges J & M Construction breached

---

**1.** Maddox was doing business as J & M Construction and Demolition. J & M Construction is not incorporated. Therefore, this opinion will use Maddox and J & M Construction interchangeably.

its contract with Conrail by failing to perform its work in a safe, orderly, efficient, and workmanlike manner and that this breach caused Tuerk's injuries. (*Id.* at ¶¶ 15–18.) The third count alleges that J & M Construction agreed in its contract with Conrail to indemnify Conrail for all losses occurring in connection with the performance of the contract and that J & M Construction did not defend and has not indemnified Conrail for the Tuerk suit and settlement.

Conrail and Maddox have made cross-motions for partial summary judgment as to Count III of the Complaint. (*See* D.I. 29; 31.) Conrail contends that it is entitled to indemnification as a matter of law, because its contract with Maddox contained a valid and enforceable indemnification provision. Maddox argues that the claim for subrogation cannot be maintained against him and that the indemnification contractual provision is unconscionable and unenforceable. For the reasons discussed below, both motions for partial summary judgment will be denied.

## II.  FACTS

The material facts of this case are not in dispute. Conrail and Maddox executed a track removal contract on June 22, 1982. The contract provided that Maddox, doing business as J & M Construction, would remove certain tracks located at Conrail's Benning Yard facility in Washington, D.C. Paragraph seventeen of the contract is an indemnity provision which states:

> Contractor will protect, defend, indemnify and save harmless Conrail and its subsidiaries, and their officers, agents and employees, against all claims, liabilities, demands, actions at law or equity, judgments, settlements, losses, damages and expenses of every character whatsoever (hereinafter collectively referred to as "claims") for injury (including death) sustained by the officers agents and employees of Conrail and its subsidiaries, the officers, agents and employees of Contractor, and all other persons whomsoever, and for damage to or loss or destruction of property of any kind by whomsoever owned, caused by, resulting from, arising out of, or occurring in connection with the performance of the work hereunder or incidental to or appertaining thereto, and whether or not such injury (including death) and such damage to or loss or destruction of property are due to or chargeable to, in whole or part, any alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation by Conrail or any subsidiary, including their officers, agents and employees.  As a result of any such Claims, contractor will assume at its own expense, on behalf of Conrail and its subsidiaries, and their officers, agents and employees, the defense of any such Claims which may be brought against such parties and pay on behalf of said parties the amount of any settlement agreed upon, judgment that may be entered, and any other amounts assessed in connection therewith, plus all costs and expenses involved.

Paragraph Eighteen of the Conrail/Maddox contract provided that Maddox would purchase the following forms of insurance:

(a) Workmen's Compensation, Employer's Liability Insurance, and Occupational Disease Insurance;

(b) *Contractor's Public Liability Insurance*

Contractor shall furnish evidence that, with respect to the operations it performs, it carries regular Contractor's Public Liability Insurance providing for a limit of not less than $500,000 single limit, bodily injury and/or property damage combined, for damages arising out of bodily injuries to or death of all persons in any one occurrence and for damage to or destruction of property, including the loss of use thereof, in any one occurrence.

(c) *Contractor's Protective Public Liability Insurance*

Contractor shall furnish evidence that, with respect to the operations performed by subcontractors, it carries in its own

behalf regular Contractor's Protective Public Liability Insurance providing for a limit of not less than $500,000, single limit, bodily injury to or death of all persons in any one occurrence and for damage to or destruction of property, including the loss of use thereof, in any one occurrence.

(d) *Railroad Protective Public Liability Insurance*

In addition to the above, Contractor shall furnish evidence that, with respect to the operations it or any of its subcontractors perform, it has provided Railroad Protective Public Liability Insurance (AAR–AASETO form) in the name of Consolidated Rail Corporation providing for a limit of not less than $500,000, single limit, bodily injury and/or property damage combined, for damages arising out of bodily injuries to or death of all persons in any one occurrence and for damage to or destruction of property, including the loss of use thereof, in any one occurrence. Such insurance shall be furnished with an *aggregate* of not less than $1,000,000 for all damages as a result of more than one occurrence.

(Emphasis in original.) At the end of Paragraph Eighteen, the contract states "[t]he furnishing of the aforementioned insurance shall not be deemed a limit action on the liability of Contractor hereunder but shall be deemed additional security for Conrail." (D.I. 32, Exhibit A at 9.) Maddox purchased the Railroad Protective Liability Insurance through a Certificate of Insurance with Lloyd's and obtained the Contractor's Public Liability Insurance from Selected Risks. (D.I. 36, Defendant's Answer to Plaintiff's Second Set of Interrogatories at ¶ 1.)

Tuerk, a Conrail engineer, was injured on July 3, 1982, when he fell over track material in the area of Benning Yard where Maddox was performing the track removal project. Tuerk sued Conrail pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, to recover damages for his injuries. Conrail made a demand upon Maddox to assume the defense of the Tuerk suit and to indemnify Conrail from the Tuerk claim. Maddox took no action on this demand. Tuerk and Conrail settled his claims for $500,000. The settlement was essentially paid by Lloyd's in fulfillment of its obligations under the Railroad Protective Liability Insurance.

In this subrogation action, Lloyd's seeks to recover from Maddox the $500,000 it paid in relation to the Tuerk settlement.[2] Selected Risks has informed Maddox that it will provide him with coverage pursuant to the terms of the Contractor's Public Liability Insurance purchased by Maddox, if Conrail recovers under either Count I (negligence) or Count II (breach of contract) of the Complaint. (D.I. 36 at ¶ 2.) Selected Risks has stated that it will deny coverage if Conrail recovers under Count III, because the Selected Risks policy excludes from coverage the assumption of liability for Conrail's own negligence. (*Id.*) Maddox has filed a state court action seeking a determination of whether the Selected Risks policy includes or excludes coverage for the assumption of Conrail's negligence. The state court action is pending.

### III. ANALYSIS

█ Although a court does not have the discretion to grant a motion for summary judgment when the movant has failed to establish the absence of any issue of material fact and that the movant is entitled to judgment as a matter of law, *see* Fed.R. Civ.P. 56(c), the question of whether a court should grant a motion for summary judgment rests in the sound discretion of the court, even if the movant has made out a case for summary judgment. *John Blair & Co. v. Walton*, 47 F.R.D. 196, 197 (D.Del. 1969); *Perma Research & Dev. Co. v. Singer Co.*, 308 F.Supp. 743 (S.D.N.Y. 1970); 6–Pt. 2 Moore's Federal Practice ¶ 56.15[6], p. 56–612–614 (2d Ed.1987). The Court will exercise that discretion to deny

---

**2.** Although Lloyd's is the real party in interest, the Court will continue to refer to Conrail as the plaintiff for purposes of clarity and consistency.

both motions for partial summary judgment.

The Court is exercising its discretion to deny the motions, because Count III could become irrelevant depending on the outcome of the trial. *See United States v. United States Cas. Co.,* 180 F.Supp. 715, 716–17 (D.Del.1960) (Denial of motion for summary judgment appropriate when several counts of Complaint could become moot depending on the outcome of the trial). If Conrail prevails on either Count I or II, Count III will be inconsequential because Conrail's loss will be covered by Selected Risks and Maddox will not have to pay any of the recovery out of his personal funds. The Court is of the opinion that to resolve the summary judgment motions on substantive grounds before trial and before the state court resolves the action between Maddox and Selected Risks is to put the proverbial cart before the horse. Additionally, a resolution of these motions will not serve to dispose of this action promptly. *See* Fed.R.Civ.P. 56 advisory committee's note. Therefore, the Court will deny the motions for summary judgment and wait to see if it is actually necessary to resolve the legal issues presented by these motions.

## IV. CONCLUSION

Conrail and Maddox's motions for summary judgment will be denied. An order shall be entered in conformity with this opinion.